**UNITED STATES of America, Plaintiff,**

v.

**W. A. BOYLE et al., Defendants.**

**Crim. No. 1741–71.**

United States District Court, District of Columbia.

Feb. 28, 1972.

See also D.C., 338 F.Supp. 1025.

Charles Ruff, Spec. Atty., U. S. Dept. of Justice, Thomas H. Henderson, Jr., Thomas L. Crowe, Spec. Atty., U. S. Dept. of Justice, Washington, D. C., for the Government.

Arthur J. Hilland, Washington, D. C., for W. A. Boyle.

Plato Cacheris, Alexandria, Va., for John Owens.

Alfred L. Scanlan, Washington, D. C., for James Kmetz.

## OPINION AND ORDER

RICHEY, District Judge.

This case came before the Court on the Motions of the defendants, W. A. Boyle, John Owens and James Kmetz, by their attorneys, to Dismiss the Indictment, pursuant to Rule 12 of the Federal Rules of Criminal Procedure. Upon the consideration of all the evidence adduced at the hearing, the memoranda of both the Government and the defendants, and the oral arguments of counsel for the respective parties, the Court concludes that the Motions to Dismiss should be denied for the reasons hereinafter set forth.

Although each defendant filed a separate Motion to Dismiss, the grounds asserted in support of each motion were substantially the same. In this opinion the Court will note any particular ground raised by one defendant which was not raised by the other defendants in order to prevent confusion. Basically, the following grounds have been stated in support of the motions:

(1) That the statute, 18 U.S.C. § 610 (1970), under which the defendants were indicted, is unconstitutional on its face and as applied in the instant case.

(2) That the statute, 18 U.S.C. § 610 (1970), is vague and indefinite and fails to adequately define an offense against the United States in violation of the Sixth Amendment to the United States Constitution.

(3) That the counts of the Indictment are offensive to the Sixth Amendment to the United States Constitution in that they are vague, indefinite and uncertain and fail to adequately inform the defendants of the nature and cause of the accusation against them so as to enable them to plead double jeopardy or collateral estoppel or acquittal at any future trial for a similar offense or offenses.

(4) That Count 1 of the Indictment alleges several separate and distinct conspiracies and, thus, more than one crime within a single count and therefore constitutes a prejudicial misjoinder of offenses.

(5) That Counts 2 to 13, both inclusive, with respect to defendant Boyle, and Counts 1 and 7 with respect to defendant Owens, of the Indictment each charge the defendants with the same offense as that charged in Count 1 of the Indictment in violation of their constitutional right under the Fifth Amendment to the Constitution of the United States not to be subject for the same offense to be twice placed in jeopardy of life or limb.

(6) That Count 13 of the Indictment is too broad, lacking in particularity and specificity, indefinite, inconsistent, duplicitous and therefore violates the Sixth Amendment to the Constitution of the United States, because it does not inform the defendant Boyle with particularity and specificity of the nature and cause of the accusation contained therein and constitutes a denial of due process under the Fifth Amendment to the United States Constitution.

(7) That Count 13 of the Indictment fails to charge the defendant Kmetz with a violation of a federal law.

(8) That the Indictment, and each count thereof, is barred by the Statute of Limitations.

(9) That there were unauthorized persons in the Grand Jury room.

(10) That the statute, 18 U.S.C. § 610 (1970), is being discriminatorily enforced.

(11) That Count 13 of the Indictment fails to allege that the monies and funds of the United Mine Workers of America were used against the wishes of the members of that organization or that the defendants, W. A. Boyle and James Kmetz, were without authority of said United Mine Workers of America to do what they are alleged to have done.

(12) That defendant Owens was compelled to testify before the Grand Jury which indicted him at a time when he was a potential defendant in the instant case, thereby abridging his rights under

the Fifth Amendment to the United States Constitution.

(13) That the Indictment in Criminal No. 1741–71, which superceded the Indictment in Criminal No. 346–71, was returned without the re-examination of any witnesses or records upon which the Indictment in Criminal No. 346–71 was found and without the introduction of any new evidence in violation of the defendants' rights under the Fifth Amendment to the United States Constitution.

(14) That the defendants have been denied their rights to a speedy trial as provided by the Sixth Amendment to the United States Constitution.

## CONSTITUTIONALITY OF 18 U.S.C. § 610 (1970)

The defendants challenge the constitutionality of 18 U.S.C. § 610 (1970) on several grounds ranging from abridgment of free speech under the First Amendment to discriminatory enforcement in violation of the due process clause and equal protection. The Court will treat each issue separately in order to prevent confusion.

*First Amendment*

Defendant Boyle argues that 18 U.S.C. § 610 (1970) (hereinafter referred to as § 610) violates a union member's right of association and his right of free speech, which are both guaranteed to him under the First Amendment to the United States Constitution. The constitutionality of the statute was recently upheld in United States v. Pipefitters Local Union No. 562, 434 F.2d 1116 (8th Cir.), aff'd on rehearing en banc, 434 F.2d 1127 (1970), cert. granted, 402 U. S. 994, 91 S.Ct. 2168, 29 L.Ed.2d 160 (1971). In the Pipefitters' case the court noted that the First Amendment clearly protects freedom of association, and that the activities of a labor union fall within the purview of this protection. *Id.* at 1122. However, the court was careful to point out that the rights of association are not absolute and may be regulated by the government in certain instances. *Id.* at 1122. *See also*

Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

■■ In order to permit the government to regulate in a constitutionally protected area, such as freedom of association or freedom of speech, a court must weigh the interests of the respective parties. In the instant case the Court must examine and balance the interests of the government in having such a regulation and the organization's interest in its freedom of association. Only if the government's interest is compelling, will the statute retain its enforceability under the Constitution. This Court agrees with the *Pipefitters'* court where it stated that the government has a compelling reason.

"[s]ince it is possible for a person to be required to join a union as a condition of employment, one of the purposes for the passage of 18 U.S.C.A. § 610 was to 'protect union members holding political views contrary to those supported by the union from use of funds contributed by them to promote acceptance of those opposing views.'" *Id.* 434 F.2d at 1123.

Furthermore the *Pipefitters'* court stated:

"Congress in passing 18 U.S.C.A. § 610 was attempting to protect the individual union member's right to his own political views and the right to support or not to support them through money contributions. In light of the substantial interest each individual has in his own political activities, it follows that Congress in passing the legislation was responding to a compelling interest." *Id.* at 1123.

This Court finds that the statute is sufficiently narrow on its face and in its application so that it does not unnecessarily infringe on Constitutional rights beyond those where the government has demonstrated a compelling interest in regulating. The individual union member can still join or make contributions to separate voluntary political organizations, since these activities are not in any way proscribed by the statute. The

union, however, is precluded from making the contributions for him. The union can engage in a wide variety of political activities without violating the statute, such as active political endorsement through the medium of regular union newspapers and other house organs directed primarily to the union's membership. *See, e. g.*, United States v. C. I. O., 335 U.S. 106, 68 S.Ct. 1349, 92 L. Ed. 1849 (1948). It is only when the union engages in active electioneering on behalf of particular Federal candidates with the idea of reaching the public at large rather than its own membership, that the statute's proscription against the use of general union funds becomes applicable.

█ In United States v. Auto Workers, 352 U.S. 567, 588–89, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957), the United States Supreme Court thoroughly analyzed the purposes of § 610. Essentially, they are twofold: (1) to prevent corruptive influences on the elective process; and (2) to prevent the use of general union funds to support ideas and candidates opposed by even the slightest minority of the union membership. *Id.* at 568–89, 77 S.Ct. at 529. The Supreme Court stated that:

> "[The statute's] aim was not merely to prevent the subversion of the integrity of the electoral process. Its underlying philosophy was to sustain the active, alert responsibility of the individual citizen in a democracy for the wise conduct of government." *Id.* at 575, 77 S.Ct. at 533.

This Court finds no reason to reject what appears to be a legitimate governmental objective, and therefore holds that the statute is constitutional with respect to the First Amendment, and with respect to its application in the instant case. The Indictment clearly alleges that monies from the union were used or directed toward political activities expressly prohibited by the statute. Furthermore, the Court believes that indirect transmission of the funds is no less illegal than direct transmission. The purpose of the statute is to preclude use of funds from general union dues for electioneering purposes in Federal elections. Although the statute does not expressly preclude indirect contributions from general funds of the union, the legislative history and the Supreme Court's opinion in United States v. Auto Workers, *supra*, clearly indicates that Congress wished to prohibit any type of use of the general union funds for the designated purposes of the statute. This would include both a direct and/or an indirect contribution or expenditure.

*Article 1, Section 2, and the 17th Amendment to the Constitution*

█ The Court finds little merit to this argument, since as indicated earlier in this opinion, the individual union member is still free to join a political organization or to send a contribution to such an organization. In addition, he still maintains his individual right to choose the congressional candidate of his choice at the ballot box. Section 610 merely prohibits the union from infringing upon this individual right by prohibiting general union funds from being used to support candidates or political causes which the individual union member may not agree with.

*Due Process and Equal Protection*

█ The defendants argue that § 610 arbitrarily discriminates against the unions and their members in violation of due process and equal protection. In United States v. Petrillo, 332 U.S. 1, 8–9, 67 S.Ct. 1538, 91 L.Ed. 1877 (1941), the Supreme Court held that Congress has the power to act selectively, and that the fact a prohibition directed at one class does not reach every other class upon which Congress may constitutionally place limitations, does not render the particular prohibition invalid. As the Supreme Court stated in United States v. C.I.O., *supra*:

> "It was felt that the influence which labor unions exercised over elections through monetary expenditures should be minimized, and that it was unfair to individual union members to permit the union leadership to make contribu-

tions from general union funds to a political party which the individual member might oppose." *Id.* 335 U.S. at 115, 68 S.Ct. at 1354.

The preceding statement clearly indicates the reason Congress placed the prohibition on labor unions, and this Court believes that the classification is rationally based.

The *Pipefitters'* court dispells the equal protection argument where it states:

"The problem with this argument is that § 610 does not prohibit working men from such activity. Section 610 only prohibits them from being forced into it. Therefore, § 610 does not create a classification which is subject to an equal protection claim." *Id.* 434 F.2d at 1124.

### Vagueness

■ Defendant Boyle argues that § 610 is vague and indefinite and fails to adequately define an offense against the United States in violation of the Sixth Amendment. The test for constitutional vagueness is described in United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954) as follows:

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Id.* at 617, 74 S.Ct. at 812.

Furthermore, in Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961), the Supreme Court added:

"The vice of unconstitutional vagueness is further aggravated where, * * * the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution." *Id.* at 287, 82 S.Ct. at 281.

Essentially, the vagueness problem narrows down to whether a person could know from reading § 610 what is prohibited by its terms. *See* United States v. Pipefitters Local Union No. 562, *supra,* 434 F.2d at 1124.

The Indictment in the case at bar clearly alleges that a direct contribution was made by a labor organization to candidates seeking Federal offices. Section 610 unequivocally procribes such conduct. As the court in United States v. Pipefitters Local Union No. 562, *supra,* stated:

"A labor organization can predict what its officials and employees may do by evaluating the organization's duty under § 610 and not allow its officials and employees to engage in conduct which is inconsistent with this duty." *Id.* 434 F.2d at 1124.

The Constitution requires that the statute convey a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." United States v. Petrillo, 332 U.S. 1, 8, 67 S.Ct. 1538, 1542 (1941). The Court believes that the preceding standards have been met by § 610, and that the statute therefore is not vague or indefinite.

### Discriminatory Enforcement

The Court has already given full consideration to defendant Boyle's argument relating to discriminatory enforcement in its opinion dated September 27, 1971, which is adopted and made a part hereof by reference.

### MULTIPLICITY

■ Defendants Boyle and Owens argue that the government has taken one conspiracy and divided it into many different substantive offenses, thereby subjecting the defendants to multiplicitous prosecution for one transaction in violation of their Fifth Amendment right against being placed in double jeopardy.

The Courts have consistently held that it is legally proper to include in an indictment both a conspiracy count and

substantive counts which are in part based on the allegations underlying the conspiracy charge. *See* Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1948); Carbo v. United States, 314 F.2d 718 (9th Cir. 1963), cert. denied, 377 U.S. 953, 84 S. Ct. 1625, 12 L.Ed.2d 498 (1964). It is also settled that a conspiracy charge is separate and distinct from the substantive offense, and therefore a plea of double jeopardy will not bar convictions on both charges. *See* Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1948); Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Furthermore, the fact that the overt acts in the conspiracy count are the same acts charged in the substantive counts does not render the indictment deficient. See Pinkerton v. United States, *supra,* at 644, 66 S.Ct. 1180. As the Supreme Court stated in United States v. Bayer, 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1910):

"The same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself."

Based on the foregoing decisions, this Court finds that the Indictment does not violate their right against being placed in double jeopardy.

## DUPLICITY

 Defendants Boyle and Owens contend that Count 1 of the Indictment should be dismissed, because they believe that this single count charges three distinct conspiracies, therefore making it duplicitous. An agreement to violate the law remains a single conspiracy although the agreement continues over a considerable period of time and contemplates numerous violations of the federal law. See Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). The Court realizes that where there is only one agreement to engage in criminal activity, the charging of a separate conspiracy for each criminal act would be prejudicial to the defendants, and the indictment itself would be subject to attack as multiplicitous. Braverman v. United States, *supra.* It must also be noted that separate conspiracies cannot be charged in a single count in the Indictment. *See* Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The Indictment in the case at bar charges a continuing conspiracy.

The defendants base their argument primarily on United States v. Goldberg, 206 F.Supp. 394 (E.D.Pa.), aff'd without consideration of the conspiracy count, 330 F.2d 30 (3d Cir. 1962), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964). The Court has researched this case, and notes that the case has been rejected insofar as the conspiracy point is concerned by at least one judge on the United States District Court for the District of Columbia. In United States v. Baker, 262 F.Supp. 657, 684 (1966), aff'd without comment on this issue, 131 U.S.App.D.C. 7, 401 F.2d 958 (D.C.Cir.1968), 139 U.S.App.D.C. 126, 430 F.2d 499 (1970), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1971), Judge Oliver Gasch stated:

"The defense memorandum also objects to the inclusion in Count 9 of conspiracy charges relating to the taxable years 1963 and 1964, arguing that a single count may embrace no more than the charge concerning a single year. A single conspiracy, however, to evade taxes for two or more years has been sustained. United States v. Haskell, 327 F.2d 281 (2d Cir. 1964), cert. denied, 377 U.S. 945, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964); Lott v. United States, 309 F.2d 115, 120 (5th Cir. 1962), cert. denied, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963), which appears to be contra to the case on which the defense relies, United States v. Goldberg, 206 F. Supp. 394 (D.C.E.D.Pa.1962)."

After carefully examining United States v. Haskell, *supra,* and Lott v. United States, *supra,* the Court finds that the

Indictment alleges a continuing conspiracy, and therefore it is not duplicitous.

## UNAUTHORIZED PERSONS IN GRAND JURY ROOM

 The Court finds no merit in this unsupported allegation by defendant Boyle. Neither in the Memorandum of Points and Authorities in Support of the Motion to Dismiss nor at the hearing on the Motion was any evidence produced substantiating this claim. The Court realizes that the presence of an unauthorized person in the grand jury room raises a presumption of prejudice to the defendant. *See* Latham v. United States, 226 F. 420, 424 (5th Cir. 1915); United States v. Carper, 116 F.Supp. 817, 820 (D.D.C.1953). In considering a motion to dismiss the Indictment on this ground, the Court is not concerned with the possible guilt or innocence of the defendant, the seriousness of the charge, or even the possible effect of the court's decision on the case. *See* United States v. Carper, *supra,* 116 F.Supp. at 821. However, an objection on this ground must state facts, rather than mere conclusions. *See* United States v. Brumfield, 85 F.Supp. 696, 705 (D.C.La.1949). No specific facts have been alleged in the instant case; therefore, the Court denies dismissal on this ground.

## DEFENDANT'S APPEARANCE BEFORE GRAND JURY

 The law is clear that if the defendant is called by the grand jury, he is required to appear and to testify, although like any other witness he may claim his privilege with regard to any particular question that may be incriminating. *See* United States v. Irwin, 354 F.2d 192, 198–99 (2d Cir.), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1965); United States v. Bachman, 164 F.Supp. 898 (D.D.C.1958). In the case at bar defendant Owens was not a defendant at the time he appeared before the grand jury as a witness. This is very similar to the circumstances in United States v. Wolfson, 294 F.Supp. 267 (D.C.Del.1968). In that case the court held that even if the grand jury acquired incriminating evidence from a grand jury witness in violation of his Fifth Amendment right against self-incrimination, said witness, who later became a defendant, was at most entitled to suppress the evidence and its fruits if they were sought to be used at trial, but it would not bar prosecution altogether. *Id.* at 274–75. The cases are in conflict as to whether or not a potential defendant should be warned of his rights under the Fifth Amendment when he testifies before the grand jury. In at least one case in this circuit, the United States Court of Appeals for the District of Columbia found that this was a crucial stage in the criminal proceedings, and therefore a potential defendant should be warned of his rights. *See* Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863 (1964).

Defendant Owens has failed to substantiate his claim that his Fifth Amendment rights were violated by the fact that he was compelled to testify before the grand jury. The only evidence of any such violation is a mere allegation on the part of the defendant that his rights were infringed upon; therefore, the Court finds insufficient grounds to dismiss the indictment pursuant to this argument.

## STATUTE OF LIMITATIONS

 The defendants argue that the indictment, and each count thereof, is barred by the statute of limitations. However, they fail to indicate any case law in support of this contention. In United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966), the Supreme Court stated that the statute of limitations "is usually considered the primary guarantee against bringing overly stale criminal charges." Where conspiracy charges are involved, the statute of limitations begins to run from the date of the last overt act. United States v. Johnson, 165 F.2d 42 (3d Cir.), cert. denied, 322 U.S. 852, 68 S.Ct. 355, 92 L.Ed. 422 (1947). The indictment in the case at bar indi-

cates that the last overt act occurred on or about June 10, 1969. The Court finds that the indictment was founded well within the five-year period of limitation provided by 18 U.S.C. § 3282 (1970).

## SPEEDY TRIAL

The defendants argue that they have been denied their constitutional right to a speedy trial under the Sixth Amendment and their constitutional rights to due process of law under the Fifth Amendment to the Constitution of the United States. Rule 48(b) of the Federal Rules of Criminal Procedure provides:

> "(b) *By Court.* If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

The United States Supreme Court in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), has recently considered the problem presented by the defendants in their motion. First, the Court indicated that Rule 48(b) was limited to post-arrest situations. *Id.* at 463. The Court then stated:

> "Appellees do not claim that the Sixth Amendment was violated by the two-month delay between the return of the indictment and its dismissal. Instead, they claim that their rights to a speedy trial were violated by the period of approximately three years between the end of the criminal scheme charged and the return of the indictment; it is argued that this delay is so substantial and inherently prejudicial that the Sixth Amendment required the dismissal of the indictment. In our view, however, the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' an event which occurred in this case only when the appellees were indicted on April 19, 1970.

> The Sixth Amendment provides that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .' On its face, the protection of the amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch which is appropriate to assure him an early and proper disposition of the charges against him. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, [79 S.Ct. 991, 3 L.Ed.2d 1041] (1959)." *Id.* at 459.

In the case at bar there have been two indictments returned within the past year. The indictment in Criminal No. 346–71 was returned March 2, 1971. The indictment in Criminal No. 1741–71 supercedes the indictment in Criminal No. 346–71, and it was returned on October 4, 1971. The Court does not believe that the defendants have demonstrated any prejudice which would require dismissal. The only delay in the case at bar to date was caused by the necessity of getting a transcript prepared from the motions hearings held during September, 1971, in order to argue the supplemental motions filed with respect to the new indictment. The Court believes that the case has been progressing in an orderly manner well within the standards discussed by the Supreme Court in the *Marion* case.

## LACK OF NEW EVIDENCE BEFORE GRAND JURY

Defendants Boyle and Owens have argued that the indictment in Criminal No. 1741–71 should be dismissed on the grounds that the indictment was obtained without reexamination of witnesses or documents supporting an earlier and substantially similar indictment in Criminal No. 346–71. The government states that the indictment in Criminal No. 1741–71 was presented to the same grand jury which returned the indictment in Criminal No. 346–71, without the presentation of new evidence or review of the evidence previously considered by the grand jury. The government read the later indictment in its entirety to the members of the grand jury before the new indictment was returned in Criminal No. 1741–71.

In Lawn v. United States, 355 U.S. 339, 349–50, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), the United States Supreme Court displayed its refusal in the exercise of its supervisory power to allow defendants any latitude in examining either the adequacy or competency of evidence supporting criminal indictments. The Court stated:

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires no more." Id. at 349–50, 78 S.Ct. at 318, quoting, Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

The preceding principle was applied by the United States Court of Appeals for the Fifth Circuit in United States v. James, 290 F.2d 866 (5th Cir.), cert. denied, 368 U.S. 834, 82 S.Ct. 60, 7 L.Ed. 2d 36 (1961), where the court stated:

"The fact that the same Grand Jury after hearing evidence has previously returned an indictment purporting to charge the same offense does not deprive the subsequent indictment returned without hearing additional evidence of the usual presumption of validity. The Grand Jury may use what it has legally heard before." Id. at 869.

It was pointed out by the government during the hearing on the defendants' Motion to Dismiss that the grand jury which returned the new indictment in Criminal No. 1741–71 was a special grand jury, and further that this grand jury had only heard evidence with respect to three cases since it returned the indictment in Criminal No. 346–71. The Court does not believe that another presentation of same evidence to members of the same grand jury which returned the indictment in Criminal No. 346–71 would have yielded any meaningful protection to the defendants. Such a presentation would have only served to delay the orderly administration of justice, which this Court feels would not be in the best interests of the defendants. Based on the foregoing, the Court concludes that dismissal of the indictment on these grounds should be denied.

## FAILURE TO ALLEGE A VIOLATION OF 18 U.S.C. § 610 (1970)

The defendants argue that the indictment fails to allege a violation of or a crime under the provisions of 18 U.S.C. § 610 (1970), because that statute does not provide that it is unlawful for an officer of a labor organization to consent to any contribution prohibited by this section. The Court has carefully read that statute as a whole, and it has concluded that the defendants' argument is without merit. Furthermore, the Court disagrees with the defendants' contention that the United Mine Workers of America should be indicted and convicted as a condition precedent to the indictment and conviction of its officers. This Court is in no position to argue with the prosecutorial discretion of the Attorney General. See also this Court's Opinion in United States v. Boyle, 338 F. Supp. 1025 Criminal No. 346–71, decided September 27, 1971.

Having given full consideration to the arguments of counsel and the memoranda and points and authorities filed with respect to the Motion to Dismiss in both Criminal No. 1741–71 and Criminal No. 346–71, the Court concludes that the defendants' Motions to Dismiss be and the same hereby are denied.