**UNITED STATES of America**

v.

**George P. ECHOLS et al. (four cases).**

**Crim. A. Nos. 75–359, 75–362 to 75–364.**

United States District Court,
E. D. Louisiana.

Nov. 25, 1975.

---

See also D.C., 413 F.Supp. 12.

Don M. Richard, Asst. U. S. Atty., New Orleans, La., for plaintiff.

William M. Lucas, Jr., Dufour, Levy, Marx, Lucas & Osborne, New Orleans, La., for defendants.

## MEMORANDUM AND ORDER

R. BLAKE WEST, District Judge.

The defendants in this matter have moved to dismiss the indictment because unauthorized persons were allegedly in the presence of the Grand Jury which indicted the defendants while that Grand Jury was in session.

An evidentiary hearing was held in this matter on November 12, 1975. After reviewing the facts adduced at that hearing, it is the opinion of the Court that the defendants' motion to dismiss should be granted. Reasons follow.

### I. THE LAW

The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ." The purpose of a Grand Jury indictment has historically been to charge individuals with serious crimes and to protect them from false accusations brought by others.[1] "The Grand Jury is a safeguard designed to protect the reputation of the accused, to avert the stigma of prosecution unless there is reasonable ground for proceeding."[2]

In order to accomplish this result, Grand Jury proceedings have always been guarded with secrecy. *Wigmore on Evidence*, Vol. VIII, §§ 2360–63, pp. 728–41. Undoubtedly, secrecy is the purpose for F.R.Crim.P. 6(d) which provides:

1. See *United States v. DeCavalcante*, 440 F.2d 1264 (C.3, 1971); 62 Harv.L.Rev. 111, 114 (1948).

2. 62 Harv.L.Rev. 111, 114 (1948).

"Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting."

An old case dealing with the subject is *United States v. Edgerton*, 80 Fed. 374 (C.9, 1897). In that case, an expert witness was not only permitted to remain after he had testified before the grand jury, but was also permitted to propound questions to subsequent witnesses. The Government argued in that case, as it does in the present case, that the defendants were not prejudiced by these actions. The Court rejected this contention and stated that the common law rule excluding all but the witness and the United States Attorney from the grand jury sessions admitted no exceptions. Potentials for prejudice were listed that could occur by the presence of an expert witness. The Court logically concluded that, if the presence of an unauthorized person is excused, it would be impossible to set the bounds to prevent abuse. This statement comes as close as possible to a *per se* rule requiring dismissal, once the presence of an unauthorized person is determined.

*Latham v. United States*, 226 Fed. 420 (C.5, 1915) is another case often cited in support of a *per se* rule regarding dismissal because of the presence of an unauthorized person in the grand jury room while the grand jury is in session. In that case, a stenographer, who was also a clerk for the United States Attorney's Office, was allowed to be present and to record testimony. The stenographer had taken an oath to keep secret the grand jury proceedings.

The Court, nevertheless, dismissed the indictment. Addressing itself to the question of whether the defendant was required to show prejudice, the Court stated that the unauthorized presence was a matter of substance, not procedure, and the presence, if unauthorized, was illegal.

■ Rule 6(d) of the Federal Rules of Criminal Procedure is a legislative expansion of the common law rules governing who may be present during grand jury proceedings. By amendments in 1933 and 1936, the presence of stenographers and operators of recording devices was authorized. Thus, Congress has narrowly defined those persons who may be present while the Grand Jury is in session.

■ The Courts have uniformly held that the presence of an unauthorized person in a Grand Jury session vitiates the indictment, even when such a person is present only in order to play back what is on a tape recording device.[3]

The pivotal issue which the Court must decide in the present case, therefore, is: Was anyone, not authorized by the provision of F.R.Crim.P. 6(d) present while the Grand Jury was in session?[4]

## II.  THE FACTS

### A.  THE SETTING

On May 20, 1975, the First Assistant United States Attorney arranged for use of the Canal-LaSalle Hotel viewing room so that seven allegedly pornographic movies could be viewed by the then-sitting Grand Jury.[5]

The viewing room was rectangular in shape and contained thirty-seven (37) seats. The screen was at one end and the projection room was, naturally, at the other. Although the projection room was sep-

---

3.  *United States v. Bowdach*, 324 F.Supp. 123 (S.D.Fla., 1971); see *United States v. Goldman*, 28 F.2d 424 (C.3, 1928); *Latham v. United States*, 226 F.2d 420 (C.5, 1915); *United States v. Edgerton*, 80 F. 374 (C.9, 1897); *United States v. Daneals*, 370 F.Supp. 1289 (W.D.N.Y., 1974); *United States v. Isaacs*, 347 F.Supp. 743 (N.D.Ill., 1972); *United States v. Boyle*, 338 F.Supp. 1028 (D.C., 1972); *United States v.*

*Borys*, 169 F.Supp. 366 (Alaska, 1959); *United States v. Carper*, 116 F.Supp. 817 (D.C., 1953).

4.  No allegation is made that unauthorized persons were present during deliberation or voting of the Grand Jury.

5.  Testimony of the First Assistant U. S. Attorney.

arate from the screening room, it was, in effect, a room within the screening room; that is, it was necessary to come into the rear of the screening room in order to get into the projection room. The door to the projection room which led into the screening room was always left open.[6]

## B. THE CAST OF CHARACTERS

Those persons whose presence has been established but not put at issue are the members of the Grand Jury, the First Assistant United States Attorney, and two Assistant United States Attorneys.[7]

Those persons the defendants claim were present but unauthorized are Mr. Lloyd Montreuil, the union projectionist, and Mr. Richard Bacon, an agent of the F.B.I. who had been given custody of the films seized by the federal government.[8]

## C. SCRIPT

### 1. Mr. Lloyd Montreuil

Mr. Montreuil arrived at the screening room at approximately 7:30 a. m., May 20, 1975. At about 8:00 a. m. that morning approximately four men in suits, one of whom Mr. Montreuil identified as Agent Bacon, entered the screening room and began to prepare for the showing of the film. Between 9:30 a. m. and 10:00 a. m. Mr. Montreuil began to screen the films.

Although it was impossible for Mr. Montreuil to overhear what members of the Grand Jury were saying when the projector was running, Mr. Montreuil testified that it would have been possible to have overheard what the Grand Jury was saying when the projector was not running, because the Grand Jury was sitting to the rear of the screening room near the projecting room.

Furthermore, it was Mr. Montreuil's testimony that he did go into the screening room while the Grand Jury was viewing the films, but only once, and then only to adjust the air conditioning control, which control was in the screening room behind the screen.

Finally, Mr. Montreuil testified that it was entirely possible to instruct someone in a short period of time how to operate a 35 mm projector, despite the fact that it is a complicated and delicate machine.

### 2. Agent Richard Bacon

Agent Bacon had previously testified before the Grand Jury in regard to the seizure of the films. After arriving that morning Agent Bacon remained in the screening room some fifteen to thirty minutes during the screening of the films.

Agent Bacon testified he did so in order to satisfy his own curiosity as to how the 35 mm projector operated.[9] Later, around noon, Agent Bacon returned to check on the progress of the screening, only to find that everyone except Mr. Montreuil had gone to lunch. Apparently satisfied that the films he was responsible for were safe, Agent Bacon again left and did not return until approximately 3:00 p. m. that day. Agent Bacon testified that he arrived while the last reel of "Little Sisters", the last film to be shown that day, was being put on the projector and that he remained inside the screening room until that reel had been shown to the Grand Jury.

## III. RULING

The facts as set forth above make it clear that Mr. Montreuil and Agent Bacon, persons unauthorized by Rule 6(d), were present while the Grand Jury was in session.[10]

■ It is clear that Agent Bacon was *not* a witness at the time he was present in the

---

**6.** Testimony of Mr. Lloyd Montreuil, the union projectionist who operated the 35 mm projector. See also diagram of screening room, Exhibit D–1.

**7.** Testimony of the First Assistant United States Attorney.

**8.** Testimony of the First Assistant U. S. Attorney.

**9.** Agent Bacon testified that he had organized all the films in the order they were to be shown prior to the time the screening had begun.

**10.** If Mr. Montreuil's presence in the projection room, or Agent Bacon's presence going from

screening room. Despite this fact, Agent Bacon had what appears to have been unsupervised and unlimited access to the room in which the Grand Jury proceeding was being held. Such a violation of Rule 6(d), even though it appears not to have been prejudicial in the present case was inimical to the Grand Jury system, and for this reason alone the defendants' motion should be granted.

The government argues that the presence of Mr. Montreuil was necessary because the United States Attorney's office does not own, and has no personnel qualified to operate, a 35 mm projector. However, when the presentation of evidence to a Grand Jury requires the use of expensive equipment, and a few minutes are needed to permit a person whose presence is authorized by Rule 6(d) to learn how to operate that equipment, the government is not entitled to lower the standard of secrecy the courts have traditionally exacted of Grand Jury proceeding, simply because of these circumstances.

The government has further argued that Mr. Montreuil had to be present because the union Mr. Montreuil belongs to requires a union projectionist to operate, as well as set up, the projector. This argument is without merit, as it is inconceivable that the Federal Rules of Criminal Procedure should be disregarded in favor of the provision of a collective bargaining agreement.

Finally, the Court feels that the resources of the United States government are sufficient to fund any expenses the United States Attorney's office may incur in presenting evidence to a Grand Jury in the manner provided for by the Federal Rules of Criminal Procedure. Indeed, a holding to the contrary would open the floodgates to a flaunting of the Federal Rules of Criminal Procedure, as circumstances which are arguably extenuating exist in many cases presented to the Grand Jury.

the projection room outside through the screening room, are not sufficient, Mr. Montreuil's walking into the screening room to adjust the air conditioning is, or all three instanc-

 It has come to the attention of the Court that the government has dismissed the original indictment in Criminal Action No. 75–359 and superceded that indictment with a new indictment. For this reason the defendants' motion is moot as to Criminal Action No. 75–359, and as such is dismissed. However, as to Criminal Actions No. 75–362, 75–363, and 75–364, IT IS HEREBY ORDERED that the motions of George P. Echols, International Theatres Unlimited, Inc., and Allen P. Duplechin to dismiss be, and the same are hereby, GRANTED.

es of unauthorized presence together are, sufficient to constitute a violation of F.R.Crim.P. 6(d).