**UNITED STATES v. CARPER et al.**
**Cr. No. 836–52.**

United States District Court
District of Columbia.
Criminal Division.
Nov. 24, 1953.

See also 13 F.R.D. 483.

Leo A. Rover, U. S. Atty. for the Dist. of Columbia, Frederick G. Smithson, Asst. U. S. Atty., William B. Bryant, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Myron G. Ehrlich, Joseph Sitnick, Washington, D. C., for defendant.

TAMM, District Judge.

The defendants Hialmar H. Carper and William L. Taylor have been charged in a multiple count indictment with conspiring to violate the Federal narcotic laws and with accepting bribes while being members of the Metropolitan Police Department of the District of Columbia. The case is presently before the Court upon the defendants' motion to dismiss the indictment. This motion is predicated upon the charges that unauthorized persons were present in the grand jury room while the grand jury was in session, while the grand jury was deliberating, and while the grand jury was voting.

The Government in its pleading opposing the pending motion admits that three United States deputy marshals were in the grand jury room while that body was hearing testimony against the defendants. The Government states that these deputy marshals were present while prisoners in their custody were testifying before the grand jury. In justification of the marshals' presence, the Government argues the necessity of deputy marshals' being present to guard the prisoner-witnesses and the failure of the defendants to show they were prejudiced by such presence. The opposition denies that anyone other than members of the grand jury was present when the grand jury was deliberating or voting. Included in the Government's pleadings are the sworn affidavits of three deputy marshals who admit their presence in the grand jury room while prisoners in their custody were testifying, but deny being present while the grand jury was deliberating or voting.

The Court has held a hearing on the motion to dismiss which included both testimony and argument. It is established that the United States deputy marshals were in the grand jury room on a substantial number of occasions while witnesses who were prisoners in their custody were testifying before the grand jury hearing evidence against these defendants. There is no evidence that these marshals or anyone else was present when the grand jury was deliberating or voting.

Challenges to the validity of indictments upon the ground that unauthorized persons were in the grand jury room are not new.[1] The long line of recorded cases upon this subject reaches back through the centuries to the beginnings of the grand jury system. A large number of cases within the United States disclose a variety of judicial interpretations and rulings, and widespread differences of opinion upon substantially the same factual situations.[2]

Two considerations have occupied the attention of most courts: (1) was the presence authorized, and (2) was the defendant prejudiced by such presence. Upon the first point there is strong conflict, many of the cases turning on a statute, with some decisions resting upon a strict reading of the statute, and others holding the presence authorized on the grounds of necessary implication. Upon the second point, was the defendant prejudiced, there is also a split of authority. A number of courts have refused to dismiss the indictment unless prejudice to the defendant is shown; others hold that

1. See United States v. Smyth, D.C.Cal., 104 F.Supp. 283, for a comprehensive exposition on many questions of the law and practice relative to grand juries.

2. See Annotation, 4 A.L.R.2d 392; also 24 Am.Jur. § 42, p. 862 (Cum.Supp.1953).

mere unauthorized presence without more invalidates the indictment.

The parent Federal statute relating to the validity of a Federal indictment was R.S. § 1025 (1872):

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

No material change was made in this statute until May 18, 1933 [3] when it was amended as follows:

"No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant, or by reason of the attendance before the grand jury during the taking of testimony of one or more clerks or stenographers employed in a clerical capacity to assist the district attorney or other counsel for the Government who shall, in that connection, be deemed to be persons acting for and on behalf of the United States in an official capacity and function."

The 1933 amendment was in force when the Federal Rules of Criminal Procedure, 18 U.S.C.A., became effective on March 21, 1946. It is these Rules which must control in the present case.

Rule 6 of these Criminal Rules governs the conduct of grand jury proceedings. Rule 6, Subdivision (d) provides:

"Who May be Present. Attorneys for the government, the witness un-

der examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting."

It will be readily noted that no provision is made for the presence of a deputy marshal in the grand jury room at any time. Was this an oversight on the part of the drafters of the Rules, or was this matter considered and rejected?

On February 15, 1946, The Institute on Federal Rules of Criminal Procedure convened at the Association of the Bar of the City of New York. The minutes of the proceedings show the following discussion of Rule 6(d) by the Honorable George Z. Medalie, then Associate Judge of the New York State Court of Appeals and a member of the Supreme Court Advisory Committee: [4]

"When I first heard of Federal criminal procedure, I found that it was the practice to try to get rid of indictments by proving that someone was in the grand jury who had no right to be there, and usually it was *some deputy marshal* or somebody else, some unauthorized person, and then the great to-do was how to get a person authorized. One of the ways to get a stenographer authorized in those days was to have him sworn in as Assistant United States Attorney, when he really was nothing of the kind.

"Now, cases have come up on motions to quash because of unauthorized persons in the grand jury room, so *we drew up a little list as to who is authorized. That is provided for.* We say 'attorneys for the government'—the phrase 'attorney for the government' is defined and limited in Rule 57; 'the witness under examination'—no one has ever moved

---

3. 48 Stat. 58, 18 U.S.C.A. former § 556.

4. New York University School of Law Institute—Proceedings, Vol. VI, pp. 153–154 (1946).

to dismiss on account of his presence; 'interpreters when needed.' Now, here is a little touch which we picked up because of the wide geographic distribution of the membership of our committee. We didn't say 'an interpreter.' We said 'interpreters.'

\* \* \* \* \* \*

"You have the same thing right here in New York; for example, a person who speaks only Turkish, a person who speaks only Greek and Turkish, a person who speaks Greek and English. That is provided for. *I don't know that it will ever come up. If it does we have provided for it.*

"Then the stenographer is definitely provided for. I think it is the law today, after many years of fumbling, that the stenographer is a duly authorized person to be present in the grand jury room.

"Now, none of these persons—and this is old law, we say nothing new —may be present when the grand jury is deliberating. The district attorney, under almost all systems, is barred from the grand jury during its deliberations. A motion to dismiss may be made on the ground that an unauthorized person was present." (Emphasis added.)

The conclusion seems unmistakable. The Committee considered even possibilities that might not come up; it noticed the previous conflict on whether a stenographer was an authorized person and made specific provision for a stenographer; it definitely named those who may be present; deputy marshals were not included in the list of authorized persons. It follows, therefore, that a United States deputy marshal is not a person authorized to be in the grand jury room.

At this point, the question arises whether the defendants are required to show that they were prejudiced by the presence of the deputy marshals. The Court concludes that the defendants are not required to do so. In the first place, as the Court has just stated, Rule 6(d) by its specific provisions restricts those who may be present in the grand jury room. It would seem to follow logically that if the rule is to have meaning, its violation is basis per se for invalidating the indictment. To hold otherwise would be to undermine the purpose, effectiveness and value of the Criminal Rules by judicial legislation which, in effect, would be saying that the Rules do not mean what they clearly and unequivocally state.

■ Secondly, in many cases the defendant would have an almost impossible task trying to prove actual prejudice to himself.[5] It seems to this Court that at most the defendant need show only probable prejudice to the grand jury system by the violation.

This brings the Court to consideration of the official status of a deputy marshal and the involuntary status of a prisoner-witness. The Court cannot say that the testimony of the prisoner-witnesses was not influenced by the presence of the deputy marshals beside the witnesses. The Court cannot say that these prisoner-witnesses did not give testimony that they otherwise might not have given, or that they did not suppress testimony which they otherwise might have given. The psychological effect of a deputy marshal as a symbol of law enforcement, of custodial authority, upon the mind of a prisoner-witness is a factor which the Court cannot evaluate fairly. In such a situation, could a defendant possibly carry the burden of proving actual prejudice?

Considering for a moment the possibilities suggested by the Government's contention that the deputy marshals' presence is unobjectionable and not prohibited by the Rules, it is not difficult

5. "We recognize the law that the presence of unauthorized persons in the grand jury room results in a presumption of prejudice to the defendant \* \* \*." United States v. Powell, 1948, D.C.Mo., 81 F.Supp. 288, 291.

to visualize situations in which the custodial officer is not a deputy marshal but the representative of some other law enforcement agency more directly and immediately associated with the detection and prosecution of crime. Is the legal distinction between the factual situation in the present case and one in which the unauthorized person in the grand jury room is a police officer directly and immediately charged with the solution of a crime about which the prisoner-witness is to testify such a pronounced one that the Court can cloak the one with the mantle of legality and yet recognize the dangers of the other and prohibit it? "If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury?" [6]

Another provision of the Federal Rules of Criminal Procedure requires comment. Rule 6, Subdivision (e) is headed "Secrecy of (Grand Jury) Proceedings and Disclosure." This section enumerates the conditions under which "a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury." The rule then states, "No obligation of secrecy may be imposed upon *any person* except in accordance with this rule." (Emphasis added.) If this rule means what it says, the Court is prohibited from enforcing any obligation of secrecy as to grand jury proceedings upon the deputy marshals who were present in the grand jury room while the prisoner-witnesses were testifying. A review of the discussions of the rule at the Institute Proceedings [7] does not indicate that this provision of Rule 6 was directed at deputy marshals, but, like a badly aimed gun shot, the important fact is not at whom the charge is aimed but whom it hits.

At the hearing on defendants' motion to dismiss, some testimony was elicited by the Government concerning the physical features of the rooms in which these grand jury sessions were held, with particular reference to the location of windows. This and other similar testimony was intended to bring out the necessity of deputy marshals' remaining in the grand jury room to insure that the prisoner-witnesses did not effect an escape. The deputy marshals' testimony suggested obvious alternative methods by which the security of the prisoners might have been insured without the attendance of the marshals in the grand jury room.

It is only fair to state that the Court has no reason to doubt the integrity of the deputy marshals involved in this case. The Court also wishes to commend the United States Attorney for his frank and voluntary admission of the presence of the marshals in the grand jury room. The fact, however, is that the Rules do not recognize the presence of a deputy marshal in the grand jury room. He may slip in by judicial legislation, but the Court cannot notice both the rule and the marshal's presence and reconcile the two.

█ In the present motion, the Court cannot be concerned with the possible guilt or innocence of the defendants, with the seriousness of the charge, or even with the possible effect of the Court's decision on the present case. The Court is aware of two major compulsions: (1) preservation of the inviolacy of grand jury proceedings, which includes any possible threat thereto; and (2) preservation of one of the basic purposes of the Federal Rules of Criminal Procedure: uniformity of Federal criminal procedure, a purpose which cannot be achieved or adhered to when individual courts practice judicial legislation in the face of a definite rule. It is such practice which adds to the cynicism of those who believe "that judgments of the courts express nothing

---

6. United States v. Edgerton, D.C.Mont., 80 F. 374, 375; Latham v. United States, 226 F. 420; Coblentz v. State of Maryland, 164 Md. 558, 166 A. 45.

7. New York University School of Law Institute Proceedings, supra, pp. 154–155.

deeper than the personal preference of the judge, and his opinions merely manipulate words and symbols to rationalize or dissemble his predilections." [8]

Perhaps there should be some provision in the Rules for the presence of deputy marshals in the grand jury room. If this is necessary, then appropriate steps should be taken to amend the Rules by specific provisions stating exactly who, as custodial officers, may be in the grand jury room and the conditions under which such presence will be permitted. This seems to be the only practical method if the Federal courts are to avoid the "wilderness of single instances."

For the reasons set forth above, the Court must grant the defendants' motion to dismiss the indictment. Counsel will submit the necessary order.

8. Address by Robert H. Jackson, Associate Justice, Supreme Court of the United States, at the American Bar Center Cornerstone Ceremony, International House Assembly Hall, Chicago, November 2, 1953.