COMMONWEALTH vs. SYLVANO PEZZANO
(and a companion case[1]).

Middlesex.  April 6, 1982. — August 4, 1982.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Grand Jury.  Constitutional Law,* Grand jury.  *Practice, Criminal,* Grand
jury proceedings.

Presence of a State police officer for security purposes during the examina-
tion of certain witnesses before a grand jury violated art. 12 of the
Declaration of Rights of the Massachusetts Constitution, where that
officer had been the principal investigator of the cases in which the
witnesses were testifying before the jury and was also a potential wit-
ness if the cases reached trial. [71-76] NOLAN, J., dissenting.
Unauthorized presence in a grand jury room of a State police officer
who had been the principal investigator of several cases being present-
ed to the grand jury posed a risk that witnesses before the jury would
be intimidated, and required dismissal of indictments returned in
those cases. [76-78] NOLAN, J., dissenting.

INDICTMENTS found and returned in the Superior Court
Department on July 14, 1978.

A question of law was reported to the Appeals Court by
*Hurd,* J.  The Supreme Judicial Court ordered direct review
on its own initiative.

*John J. Quinn* for Sylvano Pezzano.

*Paul A. D'Agostino* for Dante Ferrara.

*Kevin J. Ross,* Legal Assistant to the District Attorney, for
the Commonwealth.

LIACOS, J.  We are asked, by a question reported by a
judge of the Superior Court,[2] to decide whether art. 12 of

[1] Commonwealth *vs.* Dante Ferrara.

[2] The precise question reported is: "The question presented by this Re-
port is whether, under the Constitution of the Commonwealth by Art. 12
of the Declaration of Rights, it is appropriate for a police officer, who is

the Declaration of Rights of the Massachusetts Constitution[3] was offended by the presence of a State police officer during the examination of certain witnesses before the grand jury. We conclude that the presence of the officer in these circumstances was prohibited by art. 12. We conclude further that the defendants' motions to dismiss the indictments should have been allowed.

The defendants were indicted by a Middlesex County grand jury in July, 1978, on counts of armed robbery and kidnapping, plus conspiracy to commit each offense. One of their pretrial motions to dismiss alleged the presence of an unauthorized person in the grand jury room while the defendant Ferrara and another codefendant, not a party to this action, were being examined. The motions were denied in August, 1981, but were reported, on motion of the defendants, to the Appeals Court. Mass. R. Crim. P. 34, 378 Mass. 905 (1979). There they were consolidated, and we brought the matter here on our own motion. The facts, drawn primarily from the trial judge's report, are as follows.

In late 1977 or early 1978, one Alphonse Mellone, who was incarcerated for an unrelated offense, confessed to an armed robbery which had occurred approximately two years earlier. After reaching an agreement with the office of the district attorney in exchange for his cooperation, Mel-

the primary investigator of the case and a potential witness, to be present in the grand jury room during the examination of certain witnesses before the grand jury, despite the fact that he was previously sworn to uphold the secrecy of the grand jury and was ordered by the court to be present for security purposes."

[3] It was decided in *Jones* v. *Robbins*, 8 Gray 329, 344-347 (1857), that the clause in art. 12 of the Declaration of Rights which reads, "no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land," embodied a requirement of indictment by a grand jury as a precondition to prosecution of "capital or otherwise infamous" crimes. *Opinion of the Justices*, 373 Mass. 915, 918 (1977). *Commonwealth* v. *Harris*, 231 Mass. 584, 585 (1919). From this has followed the attribution of a constitutional base to several important features of grand jury proceedings. See *id.* at 586.

lone met with Trooper John W. Brien, a State police investigator assigned to the office of the district attorney, and implicated the two defendants, Ferrara and Pezzano, along with two others, in the robbery.

In the middle of June, 1978, Trooper Brien, accompanied by another officer, went to the Billerica house of correction, where Ferrara was incarcerated for an unrelated matter. Trooper Brien attempted, unsuccessfully, to question Ferrara about the robbery. Several days later, the other State trooper succeeded in persuading Ferrara to cooperate in the investigation by promising him he would not be indicted. On July 13, 1978, the day of the grand jury hearing, Ferrara met with the assistant district attorney who was to present the evidence. Also present were Trooper Brien and three other State troopers, at least two of whom were known to Ferrara. Trooper Brien and Ferrara did not speak with each other and had not done so since the earlier abortive attempt at an interview. Later that day, Trooper Brien presented himself at the first criminal session of the Superior Court in Middlesex County in order to be appointed to provide security while Mellone and Ferrara were testifying before the grand jury. He was duly sworn to uphold the secrecy of the proceedings and appeared in the grand jury room dressed in civilian clothes.[4] He sat in the rear of the room, made no comments, and asked no questions of the witnesses. The judge found, however, that Trooper Brien, as the primary investigating officer of the matter, "was and is a potential witness at some stage in the prosecution of the cases against these defendants." He nevertheless declined to dismiss the indictments because he found Trooper Brien's presence to be inherently necessary and without adverse influence on either Ferrara or the grand jurors.

The judge ruled in this fashion despite an admitted awareness of opinions and decisions of this court which dictate a contrary result. See *Opinion of the Justices,* 373

---

[4] Prior to the testimony of each of the two witnesses, Trooper Brien's presence was noted for the record, and he was introduced to the jurors.

Mass. 915, 919 (1977); *Lebowitch, petitioner,* 235 Mass. 357, 359, 362 (1920); *Opinion of the Justices,* 232 Mass. 601, 604 (1919); *Commonwealth* v. *Harris,* 231 Mass. 584, 585, 587 (1919). These he distinguished on the ground that they were rendered prior to changes in grand jury proceedings which had, in his opinion, the effect of diminishing the necessity of adherence to certain traditional requirements. See G. L. c. 277, § 14A (right of witness before grand jury to have counsel present); Mass. R. Crim. P. 5 (c), 378 Mass. 850 (1979) (authorizing presence of "such other persons who are necessary or convenient to the presentation of the evidence");[5] G. L. c. 221, § 86 (authorizing presence of stenographer at grand jury proceedings). Such a conclusion is unwarranted.

A principle of long standing in our system of criminal law is that the presence of an unauthorized person before a

---

[5] Rule 5 (c) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 850 (1979), was adopted in July, 1979, one year after the grand jury proceedings at bar. It provides for the presence of persons before the grand jury as follows: "Attorneys from the Commonwealth who are necesary or convenient to the presentation of the evidence, the witness under examination, the attorney for the witness, and such other persons who are necessary or convenient to the presentation of the evidence may be present while the grand jury is in session. The attorney for the witness shall make no objections or arguments or otherwise address the grand jury or the prosecuting attorney. No witness may refuse to appear because of unavailability of counsel for that witness."

The Reporters' Notes indicate that Mass. R. Crim. P. 5 (c) is patterned on Fed. R. Crim. P. 6(d), which explicitly defines who may be present while the grand jury is in session, and which, unlike our rule, makes no provision for persons "convenient" to the presentation of the evidence. Such persons are defined in the following manner: "Besides the jury, the prosecutors [see *Commonwealth* v. *Favulli,* 352 Mass. 95 (1967)] and the witness under examination, other persons 'necessary or convenient to the presentation of the evidence' may include counsel for a witness (G. L. c. 277, § 14A), an interpreter, an officer to guard a dangerous prisoner-witness, an attendant for a sick witness [see K.B. Smith, Criminal Practice and Procedure § 812 (1970)], a stenographer (G. L. c. 221, § 86), or the operator of a recording device." Reporters' Notes to Mass. R. Crim. P. 5, Mass. Ann. Laws, Rules of Criminal Procedure at 68 (1979). As will be seen *infra,* this interpretation is based on preexisting practice derived from opinions and decisions of this court. Rule 5 (c) should not be viewed as effecting any change in such prior practice.

grand jury will void an indictment. *Commonwealth* v. *Harris, supra* at 586-587. See *United States* v. *Kazonis,* 391 F. Supp. 804, 805 (D. Mass. 1975), aff'd, 530 F.2d 962 (1st Cir.), cert. denied, 429 U.S. 826 (1976); K.B. Smith, Criminal Practice and Procedure § 812 (1970); Annot., 4 A.L.R.2d 392 (1949 & Supps. 1971, 1982). This principle is based "upon the fundamental conception that proceedings before the grand jury must be in secret." *Lebowitch, petitioner, supra* at 361. This rule of secrecy imposed on the hearings and deliberations of the grand jury derives from two significant considerations. The first is a decision to "save individuals from notoriety unless probable cause is found against them and an indictment is returned and disclosed." *Opinion of the Justices,* 373 Mass. at 919. See *Commonwealth* v. *Harris, supra* at 586. The second, of special significance to the matter before us, is to shield grand jury proceedings from any outside influences having the potential to "distort their investigatory or accusatory functions." *Opinion of the Justices,* 373 Mass. at 918. See *Commonwealth* v. *Favulli,* 352 Mass. 95, 120-121 (1967) (Spiegel, J., dissenting). Such protection embraces jurors and witnesses alike, and is designed primarily to prevent attempts to overawe them by, among other things, the presence of numbers of prosecution witnesses while evidence is being taken. The proscription is particularly germane to the presence of police witnesses. *Lebowitch, petitioner, supra. Opinion of the Justices,* 232 Mass. at 604. See *Opinion of the Justices,* 373 Mass. at 919. *Commonwealth* v. *Harris, supra* at 585. *United States* v. *Kazonis, supra* at 805.

With these factors in mind, the test of unauthorized presence focuses on the extent to which the presence of a certain person could interfere with the truth-seeking goal of the grand jury. "Where that end in its essence cannot be achieved without the presence of more than one person, the rule that only one person may be present is not applicable. For example an interpreter must be in the grand jury room at the same time with the person ignorant of the English

language. A prisoner of desperate character brought on habeas corpus to testify before the grand jury might be taken into its presence under guard. An indispensable attendant for a sick or disabled witness would not contravene the rule. Where for example a ballot box is by law in custody of one person and the key to it in that of another and the grand jury needs to examine the contents of the box, the presence of the two officials necessary to open it would not be a violation of the rule. . . . Such instances, however, rest upon inherent necessity and not upon convenience. It is only when some imperative compulsion requires it to prevent a miscarriage of justice or an utter failure of the investigation imposed by law upon the grand jury that more than one stranger at a time may be before the grand jury. That is not a relaxation of the established and constitutional method of examination of witnesses before the grand jury but a part of it" (citation omitted). *Lebowitch, petitioner,* 235 Mass. 357, 362 (1920).

Thus, in the circumstances enumerated above, the presence of a police officer qua guard could be justified where absolutely necessary. See *Commonwealth* v. *Favulli, supra* at 121 (Spiegel, J., dissenting). Here, however, even assuming that these defendants were possessed of the qualities thought to require the presence of a guard, no reason is offered why that guard should also be the chief investigating officer. The Commonwealth offers no reason why, if a guard were needed, other police officers, or a court officer, could not have been employed. On a past occasion, the possibility of police presence in the grand jury room has been proposed by the Legislature, in an attempt to codify what had apparently been the practice in several counties. Our opinion of the practice has been emphatically negative. In *Opinion of the Justices,* 232 Mass. at 604, we followed the rule of *Commonwealth* v. *Harris, supra,* and declared that the "essential characteristics of the grand jury would be broken down if a police officer or other person who had investigated the evidence, interviewed the witnesses, and formulated a plan for prosecuting the accused should be

permitted to be present during the hearing of testimony. This conclusion follows irresistibly from [*Commonwealth* v. *Harris, supra*; *Jones* v. *Robbins*, 8 Gray 329 (1857)], by which we are bound. There is no inherent necessity in the efficient conduct of investigation by the grand jury which justifies such invasion of their proceedings by strangers. The presence of a police officer cannot be justified upon such ground. Indeed the attendance of the district attorney and his assistant subserves every rational purpose which could be accomplished by the proposed bill. The attendance of a police officer would afford opportunity for subjecting witnesses to fear or intimidation, for preventing freedom of full disclosure by testimony, and for infringing the secrecy of the proceedings." See also *Opinion of the Justices*, 373 Mass. at 919.

The Commonwealth, following the logic of the judge, distinguishes our earlier opinions in light of more recent modifications in grand jury practice mentioned above. With regard to such changes, we have recognized that details of grand jury proceedings originating in an earlier time must not be frozen so as to prevent flexibility in response to changing contemporary conditions. *Opinion of the Justices*, 373 Mass. at 918. At the same time, though, we have indicated clearly that the limits of such flexibility are reached where a proposed change, expeditious as it may appear to be, impinges on the fundamental considerations behind the secrecy requirement. *Id.* at 918-919. *Klous* v. *Municipal Court of the City of Boston*, 251 Mass. 292, 294-295 (1925). *Lebowitch, petitioner, supra* at 361. We see no benefit, but only a potential for grave abuse, in allowing one who is an investigating officer and a potential witness to be present while the grand jury conducts its examination. Our conclusion is based not only on history, but on principle as well. Moreover, in weighing the cost of compliance by the Commonwealth against the potential for damage to what has been seen traditionally as a fundamental protection of the individual, we perceive no added

difficulty in the conduct of the proceedings by continuing the traditional practice.

Having concluded that the police officer was not authorized to be present during the proceedings, we must decide whether such presence, in the absence of a showing of prejudice to the defendants, is a sufficient ground to dismiss the indictments. In *Commonwealth* v. *Harris, supra* at 587, we considered and rejected the contention of the Commonwealth that the burden is upon a defendant to show injury "because in the nature of things it would be impossible to prove the fact, if true, before the jury trial and because the wrong complained of is the violation of a substantial right guaranteed by the Declaration of Rights, and is not a mere failure of the grand jury to observe technical requirements and formalities." See *Commonwealth* v. *Favulli, supra* at 124-125 (Spiegel, J., dissenting); Annot., 4 A.L.R.2d 396-397 (1949 & Supps. 1971, 1982). Cf. *Commonwealth* v. *Hodge,* 386 Mass. 165, 169-170 (1982).[6] We see no reason to reach a different conclusion today.

We conclude that where the presence of such an unauthorized person before the grand jury is shown, dismissal of the indictments is warranted. See *United States* v. *Carper,* 116 F. Supp. 817, 820-821 (D.D.C. 1953) (noting difficulty involved in weighing the involvement between a custodial officer and a prisoner witness in order to determine potential impact of officer's presence on witness). Here, the judge found and ruled that "Trooper Brien's presence in the grand jury room did not adversely influence Ferrara or unduly influence the grand jury, as the record is devoid of any such suggestion and Ferrara testified at the hearing on the motion that he was not intimidated by Trooper Brien's presence." Such a conclusion is irrelevant to the principles we

---

[6] Federal decisions under Fed. R. Crim. P. 6(d) are virtually uniform in adhering to a rule of per se exclusion where the presence of an unauthorized person is shown. See cases collected in *United States* v. *Lill,* 511 F. Supp. 50, 58 (S.D.W. Va. 1980). See also *United States* v. *Bowdach,* 324 F. Supp. 123, 124 (S.D. Fla. 1971); *United States* v. *Carper,* 116 F. Supp. 817, 820-821 (D.D.C. 1953).

have enunciated. We note that our reading of the transcript of the hearing on the motion indicates that there was in fact a risk of intimidation inherent in Trooper Brien's presence. See *Commonwealth* v. *Bookman,* 386 Mass. 657, 661-662 n.6 (1982).

"We think it wise to continue to follow the well settled methods of procedure which were adopted at and have continued since the settlement of this Commonwealth." *Commonwealth* v. *Harris, supra* at 587.

Our answer to the question reported is, "No." The motions to dismiss the indictments should have been granted. The case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*


NOLAN, J. (dissenting). I dissent. The court correctly acknowledges that the rule of secrecy imposed on proceedings of the grand jury is founded in two important principles: (1) the need to protect persons from notoriety if probable cause is not found and; (2) the need to shield the grand jury from any outside influences, "which may distort their function to investigate and accuse." The trouble with the opinion lies in its abject failure to demonstrate that either principle has been violated in this case.

This failure, perhaps, explains why the court today made three references to the case of *Commonwealth* v. *Favulli,* 352 Mass. 96 (1967) (the most recent case of actual controversy on this subject decided by this court), and in each reference cited only to the dissent and never to the decision of the majority which found nothing constitutionally irregular in the simultaneous presence, on two occasions, of six prosecutors in the grand jury room. *Id.* at 106. At least one of these prosecutors had earlier interviewed a witness who was interrogated by the grand jury while that prosecutor was present. The court said, "The presence of a particular person who has previously interviewed a witness

being interrogated may tend to hold the witness to his previous testimony. That is always the possibility if the prosecutor present is the one who has interviewed the witness in the course of the investigation. There is no intimidation involved in this." *Id.* at 107.

The court's reliance on *Commonwealth* v. *Harris*, 231 Mass. 584 (1919), is regrettable because there the defendant's plea in abatement and proof demonstrated that the persons present were not authorized. Here, Trooper Brien was not an interloper, but a person authorized by the judge to be present as a security measure.

The laudable rule of secrecy is relative, not absolute. The judge found that the defendants were advised of their right to remain silent before the grand jury and of their right to counsel in accordance with G. L. c. 277, § 14A. He ruled that they voluntarily and knowingly waived those rights. The judge also found that Trooper Brien, after taking an oath to preserve the secrecy of the grand jury, was ordered to be present for security purposes. He found and ruled that his presence had no adverse influence on Ferrara or on the grand jury. We should not disturb such findings.