COMMONWEALTH *vs.* WAYNE SAYA.

Norfolk. September 17, 1982. — October 15, 1982.

Present: BROWN, CUTTER, & DREBEN, JJ.

*Pleading, Criminal,* Indictment, Amendment. *Practice, Criminal,* Amendment, Grand jury proceeding. *Grand Jury.*

Amendment of an indictment in order to correct a misnomer resulting from a clerical error was not prejudicial to the defendant, who had been adequately identified elsewhere in the text of the indictment as it originally appeared. [509-511]

Prosecutorial questions to a witness before a grand jury, respecting the criminal record of a person whom the grand jury later indicted, while undesirable, posed no threat to the integrity of the grand jury, where the indictment was clearly justified by additional testimony which the grand jury heard over six weeks later. [511-516] BROWN, J., concurring.

INDICTMENT found and returned in the Superior Court Department on March 15, 1979.

The case was tried before *Steadman, J.*

*Brownlow M. Speer* for the defendant.

*Charles J. Hely,* Assistant District Attorney (*Peter M. McElroy,* Assistant District Attorney, with him) for the Commonwealth.

CUTTER, J. Saya was convicted as an accessory before the fact to burglary (committed on December 24, 1978) of a house in Medway. He was acquitted on an indictment for burglary (on December 23, 1978) of that house. Upon his appeal from his conviction as accessory, two issues have been argued.

1. Saya objects to the allowance on February 4, 1980, by a Superior Court judge (not the trial judge) of an amendment of a clumsily expressed indictment (returned in March, 1979). Prior to the amendment the indictment

stated in part (omitting the bracketed words in the following quotations) that the grand jurors "on their oath present that DAVID BALDINELLI [WAYNE SAYA] of Malden [Cambridge]" on December 24, 1978, "at Medway . . . that David Baldinelli and others did break and enter in the night-time a certain dwelling house situated in . . . Medway, the property of Abraham Hanverger, with intent to commit larceny therein, and that before the said felony was committed, the said WAYNE SAYA did incite, procure, aid, counsel, hire, or command the said David Baldinelli the said felony commit." After the amendment the indictment read with the bracketed name "Wayne Saya" substituted for "David Baldinelli" (only where that name first appears) and "Cambridge" substituted for "Malden."

The motion to amend recited (a) that the "misnomer is a result of a clerical error; the text of the indictment correctly charges Wayne Saya as an accessory before the fact of burglary; and that the defendant is not prejudiced by the amendment," and (b) refers to Mass.R.Crim.P. 4(d), 378 Mass. 849 (1979), which contains the substance of the pre-1979 provisions of G. L. c. 277, § 35A. The back of the indictment (No. 73936) correctly refers to the indictment as being for the crime of "ACCESSORY BEFORE THE FACT TO BURGLARY" and gives the title of the case as "COMMONWEALTH vs. WAYNE SAYA."

We entertain no doubt that (even with the clerical error concerning the first reference to "David Baldinelli"), the unchanged original indictment sufficiently charged Saya as an accessory before the fact. Inartistic as the original language was, we think that Saya could have been convicted under it as an accessory as well as under the amended language which, indeed, did not fully cure the original clumsiness. See G. L. c. 277, § 79, stating that the statutory forms annexed "shall be sufficient."[1]

---

[1] The form of indictment for accessory before the fact annexed to § 79 reads "*Accessory before the fact.* (Under Chap. 274, § 2.) — *Charge principal felony and proceed*: That A.B., before the said felony was

This is not a case where the amendment of the indictment changed the person to be charged as an accessory. The indictment at all times so charged only Saya. The test suggested in *Commonwealth* v. *Snow*, 269 Mass. 598, 609-610 (1930), to determine whether the change effected by an amendment would be "material is whether judgment of conviction or acquittal on the indictment as drawn would be a bar to a new indictment drawn in the form in which it stood after the amendment." The amendment before us effected no material change in substance or in the essential elements of the crime as originally stated by the grand jury. See *Commonwealth* v. *Parrotta*, 316 Mass. 307, 308-312 (1944); *Commonwealth* v. *Jones*, 12 Mass. App. Ct. 489, 490-491 (1981). Compare *Commonwealth* v. *Balliro*, 385 Mass. 618, 619 (1982); *Commonwealth* v. *Morse*, 12 Mass. App. Ct. 426, 427-428 (1981). A trial on the amended indictment would have been barred by an acquittal or conviction of Saya on the original indictment. See *Commonwealth* v. *Michaud, ante* 471, 473 (1982). Certainly Saya was adequately identified in both forms of the indictment. Compare *Connor* v. *Commonwealth*, 363 Mass. 572, 574-577 (1973). We perceive no respect in which Saya has suffered prejudice from the amendment. See *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 747-749 (1961); *Commonwealth* v. *Benjamin*, 358 Mass. 672, 678-679 (1971); *Commonwealth* v. *Jervis*, 368 Mass. 638, 643-645 (1975); *Commonwealth* v. *Ohanian*, 6 Mass. App. Ct. 965, 966 (1979), and cases cited; *Commonwealth* v. *Brown Forman Distil. Corp.*, 307 Ky. 597, 600-602 (1948).

2. Saya contends that he suffered prejudice because of allegedly improper prosecutorial questions before the grand jury prior to the return of the indictment. The same Superior Court judge, who allowed the indictment to be

---

committed, did incite, procure, aid, counsel, hire or command the said (principal) the said felony to do and commit." See also G. L. c. 277, § 34, amended only slightly by St. 1979, c. 344, § 34.

amended, also denied Saya's motion to dismiss the indictment.[2]

Evidence before the grand jury on January 23, 1979, was given that the Medway house of a Mr. Hanverger had been entered at some time on or just before December 23, 1978, as was discovered by a neighbor who had been asked to watch the house in the owner's absence. An oriental rug, one or more antique clocks, and a piece of furniture were found moved in a manner which suggested that a burglary had been commenced by a professional burglar and that the items had been so placed so as to facilitate their subsequent removal.

A "stakeout" was arranged by the police for the night of December 23-24. As a consequence, Baldinelli and two companions who appeared that night in or near the house were arrested. After due advice of "their rights," Baldinelli gave a signed statement to the police that Saya had called him by telephone on December 23 and asked him to pick up the rug from "a house in Medway that had been robbed" and had arranged for him to be guided to the house. A companion, William Levins, also gave a statement implicating Saya. About the night's events, several grand jurors asked questions.

The Medway chief of police had testified before the grand jury about these events. The prosecutor asked him whether he had made inquiry "into the backgrounds" of Saya, Baldinelli, and the two men arrested with Baldinelli with specific reference to their criminal records. The police chief testified to some criminal records of each of them. A juror par-

---

[2] The indictment was returned by a special grand jury after two hearings in which the Commonwealth was represented by a special assistant attorney general. Records in the Superior Court Department show that this special grand jury was convened to meet on January 22, 1979, as a consequence of an amended certificate of public necessity issued by the Administrative Justice (see G. L. c. 277, § 2A) on December 27, 1978, upon written request of the Attorney General. Portions at least of the minutes of two grand jury hearings (one on January 23, 1979, and one on March 8, 1979) appear in the record appendix.

ticipated to some extent in inquiring about two of the arrested persons.

As to Saya, the chief of police testified that Saya had a criminal record including "attempted murder" and "a long list of burglaries, [and] breaking and enterings." The police chief also testified that, when Levins and Baldinelli were arraigned in the Wrentham District Court, Saya had come up to the police chief and had handed him a signed written retraction by Baldinelli of his statement of December 24 implicating Saya. About this incident, a juror or jurors questioned the witness and one juror suggested that it might "be important to see" Baldinelli "to find out if" the retraction "is authentic." During the first hearing, the witness brought out that a side door had been left "unlocked and there was no sign of forced entry." The police chief then testified that investigations showed that "Saya is a locksmith, he's involved in all that type of thing. So, there wasn't a scratch on that door knob, nothing." A juror pursued aspects of this inquiry. It is not shown that at the grand jury session on January 23 any indictments were sought.

A further hearing before the special grand jury took place over six weeks later, on March 8, 1979. At that hearing, Baldinelli (with his counsel present) voluntarily gave essentially the following testimony. On December 23, 1978, Saya (known to Baldinelli "for a few months") by telephone requested Baldinelli to go to the Medway house to pick up the large oriental rug and a piece of furniture (hutch) left in the house. Saya told Baldinelli that "he had done a burglary the day before." The back door had been left open. Baldinelli with Levins went by automobile to the house following a guide, John Thompson, who drove his own van. Thompson, at Saya's request, gave Baldinelli a memorandum of the address of the house and a sketch of the hutch. He pointed out the house. Baldinelli and Levins entered the enclosed porch of the house by the front door. They were apprehended by the waiting police. Baldinelli identified the confession statement signed by him on December 24. He also testified that he had signed later (at Thompson's request)

the statement disavowing the December 24 confession. About two weeks after the robbery he was assaulted in Cambridge by two persons known to him to be friends of Saya. The record shows no reference to Saya's criminal record at the hearing on March 8. The indictment was returned on March 15, 1979.

The Massachusetts cases adhere to the "well established principle that the adequacy of the evidence presented to the grand jury cannot be tested by a motion to dismiss." See *Commonwealth* v. *Robinson*, 373 Mass. 591, 592-593 (1977), and cases cited. An indictment may be based purely on hearsay testimony even if better testimony is available. See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 654-657 (1979), where (at 656) a preference was expressed "for the use of direct testimony before grand juries." See also *Commonwealth* v. *Gibson*, 368 Mass. 518, 523-525 (1975); *Commonwealth* v. *Dilone*, 385 Mass. 281, 284 (1982). Compare *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982, absence of any evidence of criminal activity by the defendant).[3]

The necessary breadth of the investigative power of a grand jury has been recognized. *United States* v. *Calandra*, 414 U.S. 338, 342-346 (1974), in which, at 354-355, it was held that the exclusionary rule concerning illegally seized evidence, so far as applicable in criminal trials on the merits, does not extend to grand jury proceedings. "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of . . . incompetent evidence . . . ." *Id.* at 345. See *Costello* v. *United States*, 350 U.S. 359, 361-364 (1956), and *Branzburg* v. *Hayes*, 408 U.S. 665, 700-702 (1972), where, at 701-702, it was said (citations omitted): "The role of the grand jury as an important instrument of effective law enforcement nec-

---

[3] Compare also 1 A.B.A. Standards for Criminal Justice, The Prosecution Standard, Standards 3-3.5(b) & 3-3.6(a) (2d ed. 1980), recognized (at 3-50) as not the law in jurisdictions which "allow an indictment to rest on evidence which would not be admissible at trial" The question before us was not dealt with in Model Code of Pre-Arraignment Procedure § 340.5 and commentary at 606-607 (1975).

essarily includes an investigatory function with respect to determining whether a crime has been committed and who committed it. To this end it must call witnesses, in the manner best suited to perform its task. . . . A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' . . . Such an investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors . . . . It is only after the grand jury has examined the evidence that a determination of whether the proceeding will result in an indictment can be made."[4]

The present case involves the investigatory function of a special grand jury. See note 2, *supra*. On the second day of its proceedings (while engaged in considering what the title pages of the two sets of grand jury minutes in the record appendix describe as the "Medway Burglary Ring"), it heard about a significant Medway burglary. One person apprehended at first had asserted participation by Saya and then apparently had recanted. It may have been pertinent to the grand jury inquiry to know the credibility and reliability of the repudiating confessor and of the person or persons implicated by him, and their respective habits and occupations. The criminal records also could have had practical effect upon whether to pursue the inquiry. Thus, reference to them at the first hearing, although undesirable (cf. *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 307-308 [1922]), had reasonable pertinence to the grand jury's inquiry. If, however, indictments had been sought at once, use of the records might have involved serious risk of prejudice.

In part because of a juror's suggestion, this matter apparently was further investigated. When the inquiry was resumed several weeks later, the recantation of the December 24

---

[4] Limitations upon the powers of a grand jury, none of which apply to the facts of the present matter, and the extent of permissible judicial supervision of the grand jury, are discussed by Mr. Justice Powell in the *Calandra* case, 414 U.S. at 346.

statement was itself repudiated and Baldinelli then gave direct, convincing evidence clearly justifying, by itself, the accessory indictment.[5] This evidence rendered unimportant the records introduced at the first hearing. See *United States* v. *DiGregorio,* 605 F.2d 1184, 1188-1189 (1st Cir.), cert. denied, 444 U.S. 937, 944, 983 (1979).[6] We perceive no respect, on the facts before us, in which the integrity of the grand jury was threatened. See the *St. Pierre* case, 377 Mass. at 655, where (as here) there was no misrepresentation by the prosecutor of the nature and quality of the evidence brought to the attention of the jury.

> *Denial of motion to dismiss
> indictment affirmed.*
>
> *Judgment affirmed.*

BROWN, J. (concurring). I concur in the result, albeit without enthusiasm. The Commonwealth's asking the chief

---

[5] There was no indication that any unauthorized person, not a witness, was at any time in the grand jury room (cf. *Commonwealth* v. *Pezzano,* 387 Mass. 69, 72-77 [1982]) or of any pressure at the first hearing or thereafter by the prosecutor upon the grand jury to return an indictment. Baldinelli's testimony at the second hearing met the requirements of the *McCarthy* case, 385 Mass. 160. It is not argued that the grand jury testimony (so far as the subject of objection) was brought to the attention of the trial jury. Compare *Commonwealth* v. *Bookman,* 386 Mass. 657, 662-665 (1982). For further relevant authorities see Nolan, Criminal Law §§ 26-27 (1976 & Supp. 1982); Smith, Criminal Practice and Procedure §§ 805, 811, 816-820 (1970 & Supp. 1979). The language of the *DiGregorio* case, at 1189, would support treating as not significant Baldinelli's testimony about being assaulted two weeks after the robbery.

[6] See for cases (in addition to the *DiGregorio* case) denying dismissal based on alleged misconduct by a prosecutor, *United States* v. *Riccobene,* 451 F.2d 586, 587 (3d Cir. 1971); *United States* v. *Chanen,* 549 F.2d 1306, 1309-1312 (9th Cir.), cert. denied, 434 U.S. 825 (1977). Compare *United States* v. *Serubo,* 604 F.2d 807, 814-818 (3d Cir. 1979); *United States* v. *Samango,* 607 F.2d 877, 878-885 (9th Cir. 1979). Compare also *United States* v. *Estepa,* 471 F.2d 1132, 1136-1137 (2d Cir. 1972); *United States* v. *Basurto,* 497 F.2d 781, 785-787 (9th Cir. 1974); *United States* v. *Roberts,* 481 F.Supp. 1385, 1388-1390 (C.D. Cal. 1980).

of police questions about the defendant's prior criminal record was a blatant attempt to whet the jurors' appetite with information which could not serve as a basis for an indictment. As the majority point out, the introduction of these records "might have involved serious risk of prejudice." Notwithstanding the Commonwealth's unfair and improvident actions, subsequently there was "direct, convincing evidence" presented by Baldinelli which "rendered unimportant the [criminal] records introduced at the first hearing." But for this additional evidence, I think that this case would stand on a different footing.