NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-108                                          Appeals Court

COMMONWEALTH  vs.  MILA DEPINA-COOLEY.

No. 18-P-108.

Suffolk.     December 11, 2018. - April 26, 2019.

Present:  Meade, Agnes, & Englander, JJ.

Grand Jury.  Practice, Criminal, Grand jury proceedings,
     Indictment, Dismissal.

Indictments found and returned in the Superior Court
Department on January 13, 2017.

A motion to dismiss was heard by William F. Sullivan, J.

Paul B. Linn, Assistant District Attorney (Michele E.
Granda, Assistant District Attorney, also present) for the
Commonwealth.
     Michael P. Doolin (William T. Broderick also present) for
the defendant.

ENGLANDER, J.  This case raises the question whether three

indictments returned against the defendant must be dismissed

because an unauthorized person, a police officer, was present

when one of the witnesses testified before the grand jury.

Although there is no showing that the defendant was prejudiced

by the officer's presence, the Superior Court judge ruled that the case law nevertheless required dismissal of two of the three indictments. We conclude that in the particular circumstances here -- which included an express instruction by the prosecutor to disregard the testimony of the witness in question -- the indictments should not have been dismissed. We accordingly vacate the portion of the order that dismissed the two indictments, and affirm the remainder.

Background. On January 13, 2017, a Suffolk County grand jury returned three indictments charging the defendant, Mila Depina-Cooley, with receiving stolen property with a value in excess of $250. The grand jury heard testimony from eight witnesses over six days between January 3, 2017, and January 13, 2017. The gist of the evidence was that the defendant had purchased Home Depot (store) gift cards from an individual, referred to as "subject [no.] 1," at a fifty-percent discount. Subject no. 1 was a store employee, and the Commonwealth's theory was that subject no. 1 would steal merchandise from the store and then provide it to a series of individuals -- called "runners" -- who would then return the items to the store. The store issued the runners gift cards for the returned merchandise, which the runners provided back to subject no. 1.

As indicated, the defendant's involvement in the scheme was as a purchaser from subject no. 1 of the gift cards, and

sometimes of merchandise, at a price well below their value. The defendant was a Boston police officer. The grand jury evidence included recordings of telephone conversations and text messages between the defendant and subject no. 1 regarding the purchases.

The unauthorized presence issue pertained to the grand jury testimony of one of the runners, R.C. R.C. was one of five runners to testify. R.C. was brought to the grand jury room in shackles by Lieutenant Christopher Hamilton of the State Police, because R.C. was in custody on a probation surrender matter at the time. The prosecutor then invited Lieutenant Hamilton into the grand jury room to guard R.C. After one of the members of the grand jury inquired, the prosecutor introduced Lieutenant Hamilton.

As the judge aptly put it, Lieutenant Hamilton "was an inappropriate choice as guard." Lieutenant Hamilton did not testify before the grand jury, but he supervised the lead investigator on the case. He was present during an interview of the defendant on December 6, 2016, recordings of which were presented to the grand jury. Lieutenant Hamilton may also be called as a witness at trial.

The prosecutor realized her error, however, even before the grand jury had completed its work. Accordingly, on January 13, 2017, the prosecutor instructed the grand jury to "disregard in

its entirety" the testimony of R.C., and explained that Lieutenant Hamilton should not have been present during R.C.'s testimony. Shortly thereafter the grand jury returned the three indictments for receiving stolen property with a value in excess of $250, covering three different time periods between November 11, 2010, and January 18, 2011.

In April of 2017 the Commonwealth moved in the Superior Court for a determination that the indictments were valid despite Lieutenant Hamilton's presence during R.C.'s testimony, and the defendant responded with a motion to dismiss. Relying principally on Commonwealth v. Pezzano, 387 Mass. 69 (1982), the judge ruled that the presence of the officer voided the two indictments that were premised, in part, on R.C.'s testimony -- concluding that under the case law the defendant "does not have to establish any prejudice." The judge did go on to reason, however, that the third indictment -- which covered a time period unrelated to any actions of R.C. -- was valid and could go forward. In this cross appeal, we vacate the portion of the order that dismissed the two indictments, and hold that the third indictment properly was not dismissed.[1]

---

[1] We note that this is not a case where the Commonwealth can merely reindict the defendant if the indictments are dismissed. The grand jury returned the indictments close to the time of the running of the statute of limitations. While the Commonwealth took steps to recharge the defendant in early 2017, the parties

Discussion.  1.  Historical background.  The grand jury right in this Commonwealth is derived from the grand jury right afforded in England, and is grounded in art. 12 of the Massachusetts Declaration of Rights.  Commonwealth v. Harris, 231 Mass. 584, 585-587 (1919).[2]  One important aspect of our grand jury process is that it is conducted in secret, so that a person is not publicly accused of an "infamous crime[]" until the grand jury has found probable cause to do so.  Id. at 586.  The Supreme Judicial Court addressed the evolution and limits of grand jury secrecy in Opinion of the Justices, 373 Mass. 915, 918-919 (1977):

> "Grand jury proceedings originally were public.  This made it easy for the crown to exert pressure on the jurors.  Ultimately the English grand jury won the right to examine witnesses and deliberate privately, without the presence or participation of the royal justices or prosecutors.  The tradition of secrecy or privacy continues in this Commonwealth in the qualified sense that the grand jury is guarded within reasonable limits from extraneous influences that might distort their investigatory or accusatory functions.  This relative isolation also has collateral benefits in tending to protect witnesses against intimidation, and to save individuals from notoriety unless probable cause is found against them and an indictment is returned and disclosed."  (Citations omitted.)

---

have indicated that those later charges might confront statute of limitations issues that the indictments at issue do not.

[2] Harris, 231 Mass. at 585, quotes Jones v. Robbins, 8 Gray 329, 343 (1857) ("The words by the law of the land, as used originally in the Magna Charta in reference to this subject, are understood to mean due process of law, that is, by indictment or presentment of good and lawful men").

In Opinion of the Justices, the court affirmed the constitutionality of a proposed statute which, for the first time, would allow counsel for grand jury witnesses to sit in on grand jury proceedings.  Id. at 921-922.  It was in that context that the court stated that under Massachusetts law the "tradition of secrecy or privacy continues," but in a "qualified sense."  Id. at 918.  The court went on to point out that "[i]n a somewhat ironical turn of history, the presence and assistance of prosecuting attorneys in the grand jury room during the examination of witnesses is not only considered today to be unobjectionable, . . . but is provided for by statute (G. L. c. 277, § 9), with the understanding, however, that these attorneys are not to appear in overbearing or intimidating numbers or seek unduly to impose their preferences on the jury." Id. at 919.  And in addition to prosecutors, the court noted, we also allow several other persons to be present in the grand jury room; these include stenographers, interpreters, and a "guard for a witness in custody."  Id.  These latter persons are "admitted out of necessity."  Id.

Importantly, in Opinion of the Justices, the court also noted that the details of the grand jury process are not constitutionally prescribed; art. 12 does not "freeze beyond legislative change the details of grand jury proceedings as known in the Eighteenth Century, but rather preserves the

essence of the institution as it functions in a contemporary setting. . . . Thus grand jury procedures have been altered in various respects over the years without offense to art. 12." Id. at 918.

2. Remedy. With this backdrop we turn to the matter at hand. Here the question is not whether there was a violation of grand jury secrecy, but rather, the appropriate remedy for a conceded violation -- a violation that the Commonwealth sought to remedy before the grand jury issued their indictments. While a guard for the witness, R.C., may have been appropriate, Lieutenant Hamilton should not have been in the room, given his involvement in the investigation and the fact that he could have been a witness. See Commonwealth v. Holley, 476 Mass. 114, 118 (2016); Lebowitch, petitioner, 235 Mass. 357, 360-363 (1920).

The fact that a violation has occurred, however, does not necessarily lead to the extreme remedy of dismissal. In most contexts, a showing of prejudice is required before such a remedy is imposed. See, e.g., Commonwealth v. Pina, 481 Mass. 413, 427-429 (2019) (erroneous deprivation of peremptory challenges did not warrant new trial absent showing of prejudice); Commonwealth v. Rakes, 478 Mass. 22, 31-32 (2017), quoting Commonwealth v. Freeman, 407 Mass. 279, 283 (1990) (improper statements to grand jury do not warrant reversing guilty verdict unless statements "'probably made a difference'

in [the] decision to indict"); Commonwealth v. Jackson, 471 Mass. 262, 271 (2015) (inclusion of noncitizen in petit jury did not require new trial where defendant did not show prejudice). In other contexts, we employ a harmless error analysis. Commonwealth v. Seino, 479 Mass. 463, 466-468 (2018) (violation of confrontation clause right was harmless error beyond a reasonable doubt).

Here the defendant urges that dismissal is the required remedy for unauthorized presence in the grand jury, even where no prejudice is shown. There are two Supreme Judicial Court cases of particular relevance in evaluating that proposition. The first is Pezzano, 387 Mass. 69. In Pezzano the unauthorized person present in the grand jury room was the chief investigating officer with respect to an armed robbery and kidnapping, and the witnesses involved were two of the participants, both of whom were cooperating against a third participant, the defendant Pezzano. Id. at 70-71. The evidence showed that the police officer met with the prosecutor and the witnesses the day they were to testify before the grand jury, and thereafter "presented himself at the first criminal session . . . in order to be appointed to provide security while [the witnesses] were testifying." Id. at 71.

The Pezzano court held that "in these circumstances" the resulting indictment should have been dismissed. Id. at 70.

The court emphasized that one purpose behind grand jury secrecy was "to shield grand jury proceedings from any outside influences having the potential to 'distort their investigatory or accusatory functions.'" Id. at 73, quoting Opinion of the Justices, 373 Mass. at 918. The court further concluded, as we have here, that the police officer who was also a lead investigator was not an appropriate guard, and should not have been present in the grand jury room. Pezzano, 387 Mass. at 70, 74.

The court then turned to remedy, and concluded that dismissal was "warranted." Id. at 76. The court noted that in prior cases, it had rejected the notion that the defendant must show prejudice from the unauthorized presence. Id. Notably, however, the Pezzano court went on to observe that on the facts before it, prejudice may well have been present: "our reading of the transcript of the hearing on the motion indicates that there was in fact a risk of intimidation inherent in [the police officer's] presence." Id. at 77.

The second important decision regarding remedy is the Supreme Judicial Court's recent decision in Holley, 476 Mass. 114, which reached a different result than in Pezzano. Unlike Pezzano and the case at bar, in Holley the issue of an unauthorized person in the grand jury room was not raised until after the defendant had been tried and convicted. 476 Mass. at

115. On a motion for new trial the defendant showed that "[t]wo police officers involved in the investigation of this case, who were witnesses before the grand jury in the matter, were present in the grand jury room for most, if not all, of the other witnesses' testimony." Id. at 118.

The court in Holley nevertheless ruled that the conviction was not void, and should not be overturned. Id. at 118. The court acknowledged that a violation had occurred, but pointed out that no challenge to the grand jury proceedings had been made before trial. Id. at 119. The court distinguished Pezzano on that ground, and went on to analyze whether the violation before it created a substantial likelihood of a miscarriage of justice. Id. at 120-121. The court reviewed the record and concluded that the defendant had not shown prejudice, i.e., he had "not shown that the presence of the police officers caused those who testified before the grand jury to feel coerced or intimidated." Id. at 120.

Holley, the history of the grand jury secrecy right, and the case law regarding prejudice, discussed above, convince us that dismissal of the indictments was not warranted on the facts here. Holley establishes that grand jury secrecy is not a right so extraordinary that any violation must result in the voiding of proceedings. Id. at 119-120. Holley thus departs from the most rigid language in Pezzano, and instead concludes that the

remedy for a violation of grand jury secrecy is dependent on a showing of prejudice -- as is true in determining the remedy for many other judicial process violations.[3]  As noted, the holding in Pezzano can be well understood in its factual context, where the police officer first met with the critical witnesses before they testified, and then actively sought to place himself in the grand jury room for their testimony.  387 Mass. at 71.  Those facts gave rise to a concern that the officer's presence was intended to affect the testimony given.

Our conclusion that dismissal is not automatically required for a violation of grand jury secrecy finds support in the case law addressing the Commonwealth's knowing presentation of false

---

[3] It is true that some of the cases preceding Holley indicate that grand jury secrecy is so fundamental that the court need not inquire into prejudice.  Holley, however, does not evidence the same concern, that a violation of grand jury secrecy is so fundamental that it must be remedied by dismissal. See 476 Mass. at 118-121.  Nor does Holley evidence the concern, found in some of the cases, that it would be too difficult for the defendant to demonstrate prejudice from the unauthorized presence.  Instead, Holley implicitly concludes that the court will be able to evaluate whether there was such prejudice.

Finally, we note that the cases that precede Holley, including Harris and Pezzano, are in tension with the description of the secrecy principle in Opinion of the Justices, 373 Mass. 915.  Rather than describing the grand jury secrecy principle as fundamental, Opinion of the Justices recognizes the evolution of grand jury practice and also recognizes that grand jury practice (including who may be present) is not frozen by the Massachusetts Constitution and may be adjusted.  Id. at 918-919.

grand jury testimony. Commonwealth v. Mathews, 450 Mass. 858, 876 (2008). Even in that context, where the defendant has shown serious prosecutorial misconduct, the defendant still must show prejudice for the indictment to be dismissed; he must show "that the presentation of the false or deceptive evidence probably influenced the grand jury's determination to hand up an indictment." Commonwealth v. Mayfield, 398 Mass. 615, 621 (1986).[4] It is difficult to reconcile why the presence of an unauthorized person in the grand jury room should merit a more stringent remedy than the knowing presentation of false testimony.

The facts of the case at bar are quite different from those in Pezzano, and do not give rise even to an inference of prejudice. The sole witness of concern in this case, R.C., was one of five runners who testified before the grand jury. There is nothing that suggests that R.C.'s testimony was peculiarly important, or different in kind from the testimony of the other four runners. R.C. never even met the defendant -- in his role in the scheme he dealt only with subject no. 1 -- and thus R.C. provided no testimony as to the defendant's actions. Moreover,

---

[4] After Pezzano was decided but before the decision in Holley, the United States Supreme Court also adopted the approach that an indictment should not be dismissed based upon prosecutorial misconduct before a grand jury, absent a showing of prejudice. Bank of Nova Scotia v. United States, 487 U.S. 250, 254-257 (1988).

there is nothing that suggests that Lieutenant Hamilton's presence during R.C.'s testimony was anything more than an inadvertent mistake.[5]

In addition, the prosecutor's actions in instructing the grand jury to disregard R.C.'s testimony distinguish this case from Pezzano, and from the other cases that address secrecy violations. The grand jury were instructed that Lieutenant Hamilton should not have been present, and that R.C.'s testimony must be "disregard[ed] in its entirety." Petit jurors are presumed to follow such instructions when they emanate from the trial judge. Commonwealth v. Silva, 93 Mass. App. Ct. 609, 615 (2018). In the grand jury context the prosecutor at times is responsible for instructing the grand jury on the law, and in that limited sense, serves a similar role to a trial judge. See Commonwealth v. Rakes, 478 Mass. at 32 (declining to invalidate indictment and relying, in part, on prosecutor's instruction to grand jury to disregard certain "prior bad acts" evidence that had been presented). Here we have no reason to question whether the jurors followed the prosecutor's direction.[6]

---

[5] Nor did Lieutenant Hamilton's presence give rise to a concern that the charges against the defendant were inappropriately being made public. As the supervising officer, Lieutenant Hamilton was already well aware of the investigation.

[6] The judge at one point in his decision references a "significant potential for prejudice in spite of the Commonwealth's instructions." The judge does not reference any

In the circumstances, the judge's dismissal of the two indictments was not required.  The portion of the order dismissing the two indictments is vacated, and the remainder of the order is affirmed.

So ordered.

---

specific facts giving rise to a potential for prejudice in this case, and we are aware of none.  Rather, the judge's reference to a potential for prejudice appears to be grounded in the case law that preceded Holley.